FRANCIS BELL ET AL. v. HUMBLE OIL & REFINING COMPANY.

No. A-48. Decided May 10, 1944.
Rehearing overruled June 14, 1944.
(181 S. W., 2d Series, 569)

646

*Jones, Hardie, Grambling & Howell,* of El Paso, and *John J. Watts,* of Crane, and *Thos. B. Greenwood,* of Austin, for petitioners.

The evidence shows that B'ell, at the time of his injury, was an employee of Hancock, though during the day he worked for the Humble Company, and never at any time did Hancock "loan" the employee to the Humble Company. Casualty Underwriters v. Rhone, 134 Texas 50, 132 S. W. (2d) 97; Southern Underwriters v. Willis, 110 S. W. (2d) 252; Manning v. Texas Emp. Ins. Assn., 67 S. W. (2d) 389.

*Henry Russell,* of Pecos, and *K. W. Gilmore,* of Houston, for respondent.

Defendant company owed a duty of exercising ordinary care to guard plaintiff against the negligence of the independent contractor. J. E. Watkins Co. v. King, 83 S. W. (2d) 405; Thomas v. Harrington, 72 N. H. 45, 54 Atl. 285; Cameron Mill & Elev. Co. v. Anderson, 98 Texas 156, 81 S. W. 282.

### ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

We have heretofore refused for want of merit an application for a writ of error in the above cause. Motion for rehearing on such application is now before us.

The evidence in this case conclusively shows that the plaintiff was an employee of the defendant, Humble Oil & Refining Company, and that he was working in the course of his employ-

ment as such employee at the time he was injured. The plaintiff was an employee of Hancock, the independent contractor, during the daytime, or for a part of the day, but was employed by the Humble Oil & Refining Company to work as a night watchman at night in guarding some lumber and other property that the company had on the premises.

In this connection the plaintiff testified in part as follows:

"A. He (Joe Rose, a representative of the Humble Oil & Refining Company) asked me if we had any certain hours to work (for Hancock), and if it would interrupt with my hours any to night-watch, and I told him that we didn't have any certain hours, because I wasn't working all the time. * * * A. I was out at the Humble location where he hired me to night-watch. * * * A. It was after 5:00 o'clock; it was after the 5:00 o'clock whistle. * * * Q. Now, how come you to go out there as night watchman on this particular job? A. Joe Rose had me to come out there. * * * .A. Yes. It was two or three nights when he hired me that I was out there after he hired me, I know that much. * * * A. He said 'Come out here and watch this rig.' Q. Is that all he said? A. 'If I don't interrupt your hours working for Mr. Hancock.' * * * A. I told him that I would be out there. * * * Q. Who did you expect would pay you for it? A. I expected the Humble to do it. Q. The Humble Company? A. Yes, sir. * * * Q. And you expected the Humble to pay you for it? A. Yes, sir. * * * Q. You thought you were being employed by Mr. Rose to work for the Humble Company? A. I sure did. Q. And you expected the Humble Company to pay you? A. I sure did."

It is undisputed that the plaintiff was injured at night while working as such night watchman.

The above evidence conclusively shows, we think, that the plaintiff was working as an employee of the defendant, Humble Oil & Refining Company, at the time he received his injury. He had a right to work as an employee for Hancock during the daytime and as an employee for the Humble Oil & Refining Company at night if he chose to do so.

The defendant, Humble Oil & Refining Company, was a subscriber under the Workmen's Compensation Law and carried workmen's compensation insurance for the protection of its employees, and consequently plaintiff's exclusive remedy against said defendant for the injury sustained in the course of his employment was under the Workmen's Compensation Law. He

could not maintain an action against said defendant for damages for personal injuries sustained by him in the course of his employment caused by the ordinary negligence of such defendant. Rev. Stats. 1925, Art. 8306, Sec. 3; 45 Tex. Jur. 376.

Under these circumstances the application for writ of error presents no merit. The motion for rehearing is overruled.

Opinion delivered May 10, 1944.

Rehearing overruled June 14, 1944.